PIERCE, Judge.
In this case, appellant James R. Nichols, also known as Robert Nichols, appeals to this Court from a judgment and sentence entered after a jury trial finding him guilty of a second violation of the State beverage laws.
On January 25, 1968, amended information was filed in the Pinellas County Circuit Court charging Nichols in six counts with violation of the beverage laws. All six counts charged unlawful sales of intoxicating beverages by Nichols without his having the prerequisite State beverage license for such purpose, and were all identical except that the various counts alleged different dates of such sales and different brands of beverages. All the counts alleged the previous conviction of Nichols on August 30, 1965 in the Civil and Criminal Court of Record of said County for “violation of the beverage laws”.
After trial by jury he was acquitted on count one and convicted on counts two to six inclusive. He was adjudged guilty of the latter counts and was sentenced to imprisonment for a term of six months to three years on each count, to run concurrently. From this judgment of conviction Nichols appeals to this Court. We affirm.
Four points are urged here for reversal, which we will discuss seriatim.-
Point 1. Nichols contends that it was improper “to permit a prior conviction and a current offense to be presented to a jury at one and the same time, whether by reading an information, or by evidence, even under a second offender statute”, and that to do so constituted “a violation of due process, the right to a fair and impartial trial and an attack upon the defendant’s character and reputation”. There is no merit to this contention.
Nichols admits that the case of Barnhill v. State, Fla. 1949, 41 So.2d 329, and the cases therein cited, State ex rel. Lockmiller v. Mayo, 1924, 88 Fla. 96, 101 So. 228; Benson v. State, 1924, 88 Fla. 103, 101 So. 231, and Coulson v. State, 1933, 110 Fla. 279, 149 So. 521, 522, are authority contrary to his contention. We have examined Barnhill and the other cases and find that they abundantly support the action of the trial Judge in the case sub judice in submitting to the jury not only the guilt or innocence of Nichols as to the latest offenses charged but also as to the historical fact of his previous conviction of a beverage law violation. Indeed, the cited cases make it the duty of the trial Judge to not only make known to the jury the alleged fact as to such former conviction, but that the jury must make a specific finding thereon.
Nichols in his brief argues that “it is time * * * that this matter be brought back to the attention of the Courts in view of some later decisions and in view of some out of State decisions”. We are not persuaded that we should depart from, much less presume to overrule, the established principles laid down by our Supreme *528 Court in the stated cases. Such has no place in an ordered judiciary. This point is not well taken.
Point 2. After the jurors had been deliberating about an hour, they returned to the court room and reported to the Judge they had reached a verdict. The Judge examined the “verdict” and, apparently finding that it contained no reference to the previous conviction in the Civil and Criminal Court of Record, inquired of the jurors whether their verdict meant to convict Nichols of the offenses charged in counts II to VI, which included the previous conviction. Each juror in open Court indicated his or her intention to so convict.
The Judge then explained in meticulous detail the function of the jury in the situation presented, whereupon the jury again retired to the jury room and thereafter returned into open Court its verdict of guilty upon the stated five counts as charged, which verdict was duly published. No objection was made as to such procedure, although counsel for Nichols did make a “proffer outside the presence of the jury”, the nature of which “proffer” was not made clear. No error is apparent, certainly no reversible error.
Aside from the failure to object, it is apparent from the record that the jury when it first returned to the Court room, was confused by the references in the information to the previous charge of violating the beverage laws and his conviction thereof, and that the jurors, or some of them, were under the impression that they were charged with determining his guilt or innocence on the previous charge, not simply the fact of his previous conviction. Upon the point being elucidated to them by the Court they were clearly enlightened as to their duty in the premises, and within a few minutes returned to the Court room where each in turn, upon being separately polled by the Court, stated definitely the verdict as finally returned was his or her verdict. Therefore, whatever confusion had been troubling them, or any of them, had been effectually cleared up, and a unanimous verdict was then returned which bespoke the finding of each individual juror. That is all the law required.
Point 3. Nichols contends that the State did not sufficiently prove a necessary negative fact, namely, that he was not possessed of a beverage license at the current dates of sale alleged in the information. Detective Kooshian testified that he was in charge of the investigation into Nichols’ beverage violations during parts of June and July, 1967,[1] and that he had actual knowledge that the place in which the liquor was seized (and where the previous sales were made) was not a licensed liquor store. He stated that the first floor of the establishment was a pool hall operated by Nichols and that he knew Nichols did not have a license to sell alcoholic beverages. Also, State beverage agent Stevens, who had been in the department for seven and a half years, said that to his knowledge Nichols had never at any time during such period had a license to sell liquor, up to and including the date of his arrest. Nichols did not testify, hence did not deny he was without a license. Nor did anyone testify in his behalf. Nichols argues that the only way such negative fact could have been legally established was to bring the official custodian of the beverage records from Tallahassee to testify that no such license existed.
This could have been done but it was not essential. Such negative fact was sufficiently proven by the testimony of Officer Kooshian and beverage agent Stevens. And such testimony, in the absence of evidence to the contrary, was sufficient to warrant a finding thereon by the jury. This point is without merit.
Point 4. Nichols contends that the command of the search warrant was deficient. *529 The search warrant commanded the officer serving the same to search the premises described in the warrant and to bring all tax paid intoxicating beverages found thereon, and the person found in possession thereof, “before the Court having jurisdiction”. The search warrant statute, F.S. § 933.07, F.S.A., requires that the search warrant command the officer serving the same to search the property described therein, and if the articles specified in the warrant be found, to bring the same and the person found in possession thereof “before the * *• * court having jurisdiction of the offense.”
Nichols says that the language of the warrant commanding the officer to bring the seized property and the persons found in possession “before a Court having jurisdiction” departed from the requirement of the statute, which commanded such officer to bring such articles and persons before the “Court having jurisdiction of the offense". (Emphasis supplied.) The trial Court, in ruling upon Nichols’ contention stated that: “The Court is satisfied that the allegations of the mandate is sufficient. It was returned before a Court of competent jurisdiction”. We agree.
The search warrant was signed and issued by Hon. Mark R. McGarry, Jr., Circuit Judge, Sixth Judicial Circuit of Florida, and as originally written commanded the serving officer to bring the seized articles and person arrested before “the undersigned, Mark R. McGarry, Jr., Circuit Judge, Sixth Judicial Circuit of Florida”. The quoted language had been eliminated and in place thereof had been written “a Court having jurisdiction”. This was entirely proper. The changed language comports more closely with the requirements of the statute than the original language written in the warrant'. The language “a Court having jurisdiction” used in the warrant which was served means the “Court having jurisdiction of the offense", the language of the statute. In fact, it could mean nothing else. The point here urged is without merit.
The four points urged for reversal before this Court having been determinated adversely to Nichols, the judgment appealed from is—
Affirmed.
LILES, Acting C. J., and McNULTY, J., concur.

. The dates of sale alleged in counts two through six were respectively June 24, 25, 30, and July 1 and 2, of 1967.